MORRISS REALTY COMPANY TRUST NO. 1, JULIA L. MORRISS, VERNON S. MORRISS, ALEXANDER W. MORRISS, JR., AND HERBERT S. MORRISS, TRUSTEES FOR EDITH MEPHAM, JULIA L. MORRISS, VERNON S. MORRISS, ALEXANDER W. MORRISS, JR., HERBERT A. MORRISS AND HERBERT S. MORRISS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MORRISS REALTY COMPANY TRUST NO. 2, JULIA L. MORRISS, VERNON S. MORRISS, ALEXANDER W. MORRISS, JR., AND HERBERT S. MORRISS, TRUSTEES FOR EDITH MEPHAM, JULIA L. MORRISS, VERNON S. MORRISS, ALEXANDER W. MORRISS, JR., HERBERT A. MORRISS AND HERBERT S. MORRISS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 41023, 41024, 45863, 45864. Promulgated July 10, 1931.

*C. A. Newton, Esq.,* and *George D. Burroughs, Esq.,* for the petitioners.

*Brooks Fullerton, Esq.,* for the respondent.

**OPINION.**

MATTHEWS: Since no evidence was introduced with respect to the minor issues raised by petitioners, we may regard them as abandoned.

The sole issue, and the only one argued by counsel, is whether the two trusts are taxable as trusts or as associations under the identical provision of the Revenue Acts of 1924 and 1926:

SEC. 2. (a) When used in this Act—

\* \* \* \* \* \* \*

(2) The term "corporation" includes associations, joint-stock companies, and insurance companies.

The petitioner attempts to raise a question upon section 704 of the Revenue Act of 1928, which provides in substance that a taxpayer who has filed his return as a trust for any taxable year prior to the taxable year 1925 shall be taxable as a trust and not as a corporation, if it was to be considered a trust under the Treasury regulations in force at the time the return was made, or under any ruling of the Commissioner interpreting the revenue acts. Subsection (b) of the same section deals with the situation of a single trustee and may be disregarded, therefore, in this connection. This provision was intended to give a taxpayer, which might be either a trust or an association according to the test applied by the Commissioner pursuant to decisions of the Supreme Court, the benefit of the Supreme Court's earlier "control test," of *Crocker* v. *Malley*, 249 U. S. 223. With respect to the present petitioners, however, this issue is disposed of for the reason that the 1924 returns were filed after the effective date of the new regulations which were formulated to incorporate the new tests set out by the Supreme Court in *Hecht* v. *Malley*, 265 U. S. 144. The Board discussed this question at length in the case of *Commercial Trust Co.*, 18 B. T. A. 1248, and adopted the Commissioner's ruling fixing the effective date of the new regulations and rulings at August 11, 1924.

The distinction between trust and association has been considered by this Board in many cases, and the principles laid down by the Supreme Court in the *Crocker* and *Hecht* cases and *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, construed. An historical review of these principles appears in *Durfee Mineral Co.*, 7 B. T. A. 231. More than a brief reference to them here is unnecessary. The *Crocker* case involved the Federal income tax and the court reached the conclusion that the trust was not an association, after applying the test of control of the trustees by the beneficiaries. In the *Hecht* case this criterion was apparently subordinated, for the court said:

The trusts are to be deemed associations within the meaning of the Act of 1918, this being true independently of the large measure of control exercised by the beneficiaries in the *Hecht* and *Haymarket* cases, which much exceeds that exercised by the beneficiaries under the Wachusett Trust.

It further stated that it did not believe such an organization "should be exempt from the excise tax [capital stock tax] on the privilege of carrying on their business merely because such a slight measure of control may be vested in the beneficiaries, that they might be deemed strict trusts within the rule established by the Massachusetts courts." The court spoke of the trustees being "associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises."

All the inferior Federal Court and Board cases that have arisen since the *Hecht* case have tended to emphasize the test of business purposes. It would seem possible to reconcile the *Crocker* case with the *Hecht* case by regarding the control test applied in the former as a necessary ingredient of the quasi-corporate structure test which is touched upon in the *Hecht* case. The next important case decided by the Supreme Court was the *Burk-Waggoner* case in which the court held that an organization, although a partnership under Texas law, was nevertheless to be treated as an association under Federal income-tax law and not as " an ordinary partnership." By reason of its quasi-corporate form and " because of this resemblance in form and effectiveness, these business organizations are subjected by the Act to these taxes as corporations." This case again involved the income tax, but no reference is made in the opinion to the *Crocker* case.

We therefore have a triple test: (1) Business purpose; (2) business operations; and (3) quasi-corporate structure. There has unavoidably been some variation in emphasis, depending upon the particular facts of the case, put by various courts upon these tests.

### *Trust No. 1.*

When we come to the application of these principles to the facts of the first trust in the instant case, we find that Trust No. 1 had three trustees, two of them, Vernon and A. W., Jr., being sons of the settlor, and Ralph, his nephew. The sole beneficiary was A. W. Morriss himself the settlor, who had a right to dispose of his interests by will, or other instrument during his life. After the beneficiary's death, his widow, Julia, and his four children, H. A., Edith, Vernon and A. W., Jr., became beneficiaries. Under the original instrument of April 9, 1907, the term of the trust was ten years and at the end of the term any property still unliquidated was to be sold at public auction. Any of the two trustees might subdivide, convey land, and borrow money, etc. A trustee might appoint his successor by instrument or will and if no such appointment was made, the judge of the local court was to do so on application of the beneficiaries. The trustees must resign on request of five-eighths of the beneficial interest. The proceeds of the liquidation of the trust property were to go to the beneficiary during his life and on the termination of the trust the balance unliquidated also. His interest was assignable in whole or in part during his life and at his death by will. Neither the beneficiary nor his assigns, however, had any right to partition the property; his right was to the proceeds only; and no beneficiary, if an assignment should be made, had any right to encumber any part of the holdings or to sell any part without first offering it to the

other beneficiaries. The second trust instrument of December 26, 1916, extended the trust to December 17, 1930. The third trust instrument of December 6, 1918, substituted Herbert S., brother of the settlor, for the former's son, Ralph, who had died in the meantime; and by the same instrument the corpus of the trust was increased by a further conveyance made by the beneficiary and his wife to the trustees. The fourth and last trust instrument of April 6, 1922, conferred additional power on the trustees to purchase land and other property and ratified prior acquisitions and sales of the property by the trustees. No land was bought, however, after A. W. Morriss's death in November, 1923.

Applying the control test to this situation, we find only such powers in the beneficiaries as would appear in the ordinary trust, with the exception of the power of five-eighths of the beneficial interest to compel the trustees to resign. The trust does not have a quasi-corporate structure. Although the beneficial interest may be assigned, it is not divided into shares or units of interest with the intention of making it freely transferable. There are apparently contemplated no regular meetings in the nature of directors' meetings.

Applying the test of business purpose this trust has certain of the aspects of an " ancestral trust," which has been passed upon by the Board in several cases hereinafter considered, for although the settlor had the sole beneficial interest in the beginning, his children were given the management of the property during his lifetime and whenever the beneficiary should die, would become the heirs of such beneficial interest, as they in fact ultimately became.

As to business operations, the trustees were authorized to purchase and did purchase additional land; and having authority to subdivide city property, they did so; and in order to sell the lots more readily built houses upon some of them. They also rented to tenants two office buildings in which the trustee owned a one-half interest, but the renting of these would not obstruct the purpose of liquidation, but would, since this was business property, help the sale. On the authority of the Supreme Court cases decided under the Corporation Excise Tax Act of 1909, upon which respondent's counsel relies, it might be said that the trustees were engaged in business, *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *McCoach* v. *Minehill Railroad Co.*, 220 U. S. 185; *United States* v. *Emery & Co.*, 237 U. S. 28; but even if we say that they were engaged in business, we must not lose sight of the original purpose for which the trust was created, that of liquidation of the property; and the doing of other acts incidental to this ultimate purpose would be justified on the ground of conservation of property and securing the means of earlier liquidation. This argument

was completely answered in *Blair* v. *Wilson Syndicate Trust*, 39 Fed. (2d) 43, in which the Circuit Court of Appeals for the Fifth Circuit affirmed this Board's decision reported in 14 B. T. A. 508. The court said:

> It is contended that the test is whether the respondent was conducting a business and the beneficiaries had control of the trustees. To sustain this, a number of cases dealing with the doing of business are cited. They need not be reviewed as it may be considered settled, within the meaning of the taxing laws, that, if a corporation is doing that for which it was organized, for the purpose of earning profit, very slight activity is sufficient to constitute the doing of business. [Cases cited.] On the other hand, if a corporation is not organized for profit, but merely to hold real estate for ultimate disposal and liquidation, it is not doing business, although it incidentally collects the rents and distributes them. [Cases cited.]

And it was said in *White* v. *Hornblower*, 27 Fed. (2d) 777:

> The power to take over and run the business of the Costello corporation given to the trustees in the deed of trust is limited by the purpose for which the trust is created. It does not change the essential character or object of the trusteeship; i. e., liquidation, not continuing business activity.

Cf. *Neal* v. *United States*, 26 Fed. (2d) 708, reversed by the Circuit Court of Appeals for the First Circuit in 28 Fed. (2d) 1022, following the principle of the *Hornblower* case.

The *Wilson Syndicate Trust, supra,* presents a factual situation as to trust powers, purpose and activities closely analogous to those in the instant case. A mother was the settlor, the trustees were her two sons-in-law, the beneficiaries were herself and her two daughters. The Board stated its conclusion in that case as follows:

> It was not chartered under any statutory law, but was created by deed, as permitted under the general trust laws of the State of Texas. The trust held only the legal title to the assets, the beneficial interest therein being in the beneficiaries. It did not issue certificates evidencing proportional interest owned by each beneficiary. The beneficiaries had no voice in or control over the fundamental policies of the organization. They could only remove a trustee and designate another by written declaration, executed in the form prescribed for the execution of a deed. There was no board of directors. At first there were two trustees, each empowered to act alone if he deemed it necessary. Later, the bank was sole trustee. There was no periodical or regular manner of distribution of profits among the beneficiaries. It is true that the trustees continued to carry on the several businesses in which J. B. Wilson was engaged prior to his death, and they sold assets, bought other assets, improved ranches, and kept the property in repair, none of which activities is inconsistent with a trust. They were within the purview of the deed creating the trust.
>
> The trust was not created for the purpose of carrying on a business, and the trustee bought and sold, and carried on other transactions, such as making repairs, only for the purpose of conserving the assets until a favorable time should arrive when a liquidation could be effected under fairly favorable circumstances, and make a distribution among the beneficiaries.

In view of all the facts in this case we hold that the Wilson Syndicate Trust should be taxed as a trust and not as a corporation. * * *

The Board's decision as stated was affirmed by the Circuit Court, the court saying:

The difference between the respondent and the Massachusetts trusts considered in *Hecht* v. *Malley*, supra, is very marked. The respondent was not organized for the purpose of doing business for profit, nor for doing business at all. Its purpose was to liquidate and distribute an estate. The beneficiaries, other than its creator, had no vested interest in the property and no voice in instituting the trust. They received their distributive portions purely as donations from their mother, and could not dispose of their interest, except by an equitable assignment of their rights, subject to the orderly administration of the trust. Such slight business activities as the trustee conducted were in furtherance of the ultimate purpose of liquidation and distribution. The similarity as to the provisions for terminating the trust, amending the deed, and removing and electing trustees are hardly material, as they are not unusual in express trusts.

The test urged by the petitioner has no application to the facts in this case. A distinction is to be made between an agreement between individuals in the form of a trust and an express trust created by an ancestor, although they may have some features in common. The controlling distinction is that one is a voluntary association of individuals for convenience and profit, the other a method of equitably distributing a legacy or donation. Congress has recognized this distinction, classing the former as associations, to be taxed as corporations, and at the same time providing for a separate and distinct method of taxing the income of estates and trusts created by will or deed, classing them together for that purpose. Section 219, Revenue Act of 1921.

In *Little Four Oil & Gas Co.* v. *Lewellyn*, 29 Fed. (2d) 137, affirmed by the Circuit Court of Appeals for the Third Circuit in 35 Fed. (2d) 149, *certiorari* denied, 280 U. S. 613, a very different situation was presented. In that case four men assigned property to themselves as trustees. They were engaged in buying and selling real estate, and mining for oil. Capital stock was issued and the shares were freely transferable. The trustees were given very full powers. But, as the court said, " The real test is whether the stockholders or trustees, or both combined, carry on business for profit, and if they do, they constitute a business trust—in legal effect an association or a joint stock company—with liability for taxes." It held that by this test the taxpayer was an association.

Nor is it difficult to distinguish the instant case from the line of Board decisions represented by the *Lansdowne Realty Trust* case, 20 B. T. A. 119, in which articles 1502 and 1504 of the Commissioner's regulations (62, 65, 69) are reviewed and citations of the Commissioner's rulings on specific cases are collected. In that case the trustees held a lot and one-story building. They made leases, etc., collected the rents and made monthly distributions of the estimated income, the balance in income being distributed at the end of the

year. The trustees never considered a sale of the premises. The persons interested were evidently associated together for a business purpose. No ancestral donation was involved. The findings of fact show that no thought of liquidation of the assets arose and no liquidation took place. The Board held the taxpayer an association on the facts there present, but even on these facts there was room for a reasonable difference of opinion. The Circuit Court of Appeals for the First Circuit took a different view from that of this Board and reversed the Board's judgment, saying in its decision of May 28, 1931:

\* \* \* They [the trustees] were not conducting business after the mode and manner of a corporation, but were doing nothing more than trustees ordinarily would be called upon to perform in the management of the property.

The same Circuit Court had the same day reversed the District Court for Massachusetts in *Gardiner* v. *United States*, 43 Fed. (2d) 450. In that case the decedent's estate after his death was transferred by his heirs to trustees who managed the estate, made leases and collected rents. The stockholders had no control, but an element of corporate form appeared in the transferable shares. The District Court apparently on this ground held the body an association, for it said, "whether its activities amounted to carrying on business is a distinct question." The Circuit Court, considering the nature of the trust's creation, thought it a trust.

Here, we have a father and his sons, the father being the grantor. The confessed object of the trust was liquidation of the property, and this was carried on as fast as was expedient. Only such property was bought as was necessary to protect property already held, and no new property at all was acquired after the father's death. The trust was not quasi-corporate in structure, for the interests were not readily transferable and were held only by members of the settlor's family; and the beneficiaries had no control over the trustees and held no meetings.

Where the ancestral element has been present and the evident object of a trust has been liquidation of property, the Board has followed the principle of *Blair* v. *Wilson Syndicate Trust*, *supra*, and held such bodies trusts and not associations. In *Wilson Trust*, 20 B. T. A. 549, the body was held a trust, although the shares were transferable. In that case a father conveyed to himself and two sons as trustees, in trust for the father, the two sons and two daughters. Again in *Dauphin Deposit Trust Co.*, 21 B. T. A. 1214, the same view was sustained, but by a divided Board, since a differentiating factor there entered, the descent of the property to the children having taken place before the trust was created.

In the light of the authorities, we hold that Trust No. 1 was a trust and taxable as such, and not an association.

## *Trust No. 2.*

With respect to Trust No. 2, although the facts may not present so clear a case, we have reached the same conclusion.

In Trust No. 2 there are certain specific differences which distinguish it from Trust No. 1. The original instrument creating Trust No. 2, on December 17, 1910, fixed a term of ten years at the end of which the property was to be sold at auction, if not sooner liquidated. Any three of the four trustees might subdivide, sell, convey, etc., rent and build. The trustees had no authority to appoint their successors unless the beneficiaries should have failed to act, and in such case three of the trustees might name the new trustee. If the trustees did not act, then the local court might appoint a new trustee on application of 2 per cent of the beneficial interest. The beneficiaries had no right to partition the property, but the right to proceeds only. They had the right by a majority of the interest to appoint a new trustee and five-eighths of the beneficial interest might compel any trustee or trustees to resign. In the beginning no transferable shares were issued, but the interests of the beneficiaries might be sold, pledged, transferred, etc., with the limitation that in the case of such sale by a beneficiary he must first offer his interest to the trustees and other beneficiaries. Annual meetings of the beneficiaries were held on the first Monday in May, when a report of the trustees was presented. This appears to be the fair import of the provision, which is as follows:

Any of the Trustees herein named, or their successors shall be required to resign this trust upon the written request of the owners of not less than five-eighths in value of the beneficial interests aforesaid, or, on failure so to do may be removed therefrom, and a successor appointed by the judge of the Circuit Court of Madison County aforesaid, in term time or vacation, upon the application of the owners of such five eighths as aforesaid, such removal and appointment to be evidenced in writing and recorded as aforesaid.

\* \* \* \* \* \* \*

\* \* \* at annual meetings held at the office of the said Trustees in Granite City, Illinois, at three o'clock P. M. on the first Monday in May of each year said Trustees and their successors shall make and submit a statement of all receipts and expenditures on account of said Trust and a full report of their acts and doings during the year in respect to said real estate and the execution of the Trust and said Trustees shall cause notice of the said annual meetings to be given to the said beneficiaries and their assigns by written notice addressed to each of them respectively, deposited postage prepaid, in the post office in the City of Granite City not less than five days previous to the date of such meetings; provided special meetings of said beneficiaries, their legal representatives and assigns may also be called whenever said Trustees or a majority of them deem necessary or advisable, by notice addressed and deposited as aforesaid not less than one day previous to such meetings.

The second instrument of December 26, 1916, extended the term of the trust for twenty years from December 17, 1910. It also con-

firmed in the trustees all rights and powers to land conveyed to them since the original trust instrument, and to such land as might thereafter be conveyed. The third trust instrument of December 16, 1919, fixing the extended term at December 16, 1930, substituted Herbert S. Morriss for his son, Ralph, deceased, as a trustee, and gave the trustees a right to purchase further lands subject to the trust. Herbert Morriss acquired the beneficial interest from Ralph by purchase from Ralph's heirs. The same instrument ratified the purchase of several tracts of land which had been made on December 17, 1915, November 20, 1916, April 17, 1917, April 1, 1918, July 11, 1919, and December 24, 1919, all of which property was to be impressed with the same trust. No land in this trust was bought after the death of A. W. Morriss in November, 1923.

The trustees under this trust were A. W. Morriss, who conveyed to the trustees approximately two-thirds of the property, Vernon, his son, A. W., Jr., another son, and Ralph, the son of H. S. Morriss, brother of A. W. Morriss. H. S. Morriss had, through his son Ralph, conveyed to the trust approximately one-third of its property. The beneficiaries were the same four persons as the trustees, A. W. Morriss holding 33⅓ shares, his two sons 16⅙ shares each, and his nephew, Ralph, 33⅓ shares. By A. W. Morriss's will his interest was divided among his widow and heirs which included Julia, his widow, and H. A., Edith, Vernon, and A. W., Jr., his four children. By Ralph Morriss's death, his father, H. S. Morriss, succeeded, as already stated, by purchase from Ralph's heirs. The increase in the number of beneficiaries necessitated the issuance of certificates of interest indicating the exact portion of beneficial interest held by each of the beneficiaries, but these were not negotiable and were intended merely as evidences of the proportion of ownership in each beneficiary. These certificates never passed out of the hands of the original beneficiaries.

Applying to this trust the same principles which we have already discussed, we find that it savors, like the first trust, of an ancestral creation, since the original settlors were two brothers and the beneficiaries were the children of the two settlors, one settlor also being included in this group. The ultimate purpose also was the liquidation of the property. It is true that as in the case of the first trust, new property was acquired by the trust from time to time, including three substantial purchases as set out in the facts, the Vorwald Farm at $40,000; the Lubitsch Farm at $50,000; and the Johannigmeier Tract at $24,000. These were, however, adjoining properties. The trustees also subdivided the property of the trust and built houses on it from time to time in order to expedite the sale, but the ultimate purpose being liquidation and the trust hav-

ing more or less of an ancestral character, we may disregard the acts done by the trustees incidental to the conservation and more ready liquidation of the property. It was, like Trust No. 1, strictly a family affair.

Since Trust No. 2 meets this important test, it is idle to insist upon here, or even consider, other criteria which might distinguish it from Trust No. 1. Neither counsel for the petitioner nor for the respondent attempted to distinguish one from the other. It is perhaps true that there are elements in Trust No. 2 which give it something of a quasi-corporate structure, and the fact that all of the trustees were beneficiaries under the original instrument makes any consideration of the measure of control of the latter over the former, in the beginning at least, academic, but not so later on when the trustees' duties and beneficial interests shifted by death. We do not believe that such considerations, however, should outweigh the fundamental one of ultimate purpose. We conclude, therefore, that Trust No. 2 was likewise taxable as a trust.

*Judgment will be entered under Rule 50.*