TWIN BELL OIL SYNDICATE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45052.    Promulgated May 25, 1932.

*John B. Milliken*, *Esq.*, *George H. Koster*, *Esq.*, and *Claude I. Parker*, *Esq.* for the petitioner.

*J. L. Backstrom*, *Esq.*, and *Arthur Carnduff*, *Esq.*, for the respondent.

174

OPINION.

MATTHEWS: 1. The first question is whether in 1925, 1926 and 1927 the petitioner must be regarded as a trust or as an association. For the years here involved petitioner may not avail itself of section 704(a) of the Revenue Act of 1928 as it did in the proceeding for the prior years 1922 and 1923, Docket No. 29518, and the tests to be applied in distinguishing a trust from an association must be those which this Board and the courts have found applicable in 1925 and subsequent years.

The Commissioner amended article 1504 in his Regulations 65 (Revenue Act of 1924), distinguishing a trust from an association in accordance with the test laid down in the Supreme Court's decision in *Hecht* v. *Malley*, 265 U. S. 144. The explanation of this volte-face is given in G. C. M. 6517, C. B. VIII–1, p. 152, at pp. 153, 154 (June 24, 1929).

The *Hecht* case has been so fully discussed in our prior decisions that it is unnecessary to consider it in detail here. As we pointed out in our decision in the *Morris Realty Trust*, 23 B. T. A. 1076, the Supreme Court put aside, apparently, the " control " test and substituted therefor business purpose, business operations and quasi-corporate structure.

A business enterprise, such as the petitioner's, created to drill for oil, and carrying on such operations, falls within the category of associations. The petitioner's organization was accomplished by Lipps and his cotrustees with a definite business purpose in mind, and the drilling of oil wells by the petitioner on its leased land, although by contract, was clearly a business operation. In the tax-

able years the petitioner was under the exclusive control of the trustees, but that is beside the point. It did not have in some respects a quasi-corporate form. The trust declaration had been amended again on March 14, 1925, and the annual meeting of the unitholders was left to the trustees to call at their discretion, by the substitution of " may " for " shall " in paragraph twelfth. Paragraph eighteenth prohibited the trustees, except by their unanimous consent, from acquiring new property or selling the old. But the unitholders held transferable certificates which might be transferred like corporation stock. Under paragraph fifth the trustees and unitholders disclaimed any liability beyond the trust corpus. Petitioner was empowered to act under a common seal. The trustees assumed the style of " officers," although Lipps testified their duties remained undifferentiated. The trustees received salaries during the years here involved. Aside from the exclusive control resident in the trustees, petitioner's organization resembles in purpose and in form that of a corporation.

The instant case is very similar to that of *Little Four Oil & Gas Co.* v. *Lewellyn*, 29 Fed. (2d) 137; affd., 35 Fed. (2d) 149; certiorari denied, 280 U. S. 613, in which the court held the taxpayer an association taxable as a corporation, saying, " The real test is whether the stockholders or trustees, or both combined, carry on business for profit * * *." *White* v. *Hornblower*, 27 Fed. (2d) 777.

Petitioner relies strongly upon *Extension Oil Co.*, 16 B. T. A. 1028; affd., 47 Fed. (2d) 65, in which under facts somewhat similar to those of the instant case we held a body to be a trust and not an association. But that case can be easily distinguished. There, the organizers combined for the sole and restricted purpose of drilling a single oil well *for test purposes*, and as soon as the value of the leased land was thus learned, of selling the lease. This purpose was promptly carried through in eleven months time. Here, the original trust agreement ran for twenty years and as amended for fifty, and the trustees were given full powers to develop the lease as they saw fit. They did, it is true, distribute the profits when made, but this fact of distribution does not, in our opinion, negative the petitioner's obvious business purpose. It was carrying on a business enterprise and was fearful, as one of its trustees confessed, all the time of being treated for Federal tax purposes as an association. This fact accounts for the excessive circumspection apparent in the amendment of its trust declaration on March 14, 1925.

Quasi-corporate form is not an indispensable element of an " association." *Sears, Roebuck & Co., etc., Fund* v. *Commissioner*, 45 Fed. (2d) 506. But business purpose and activities are criteria which clearly bring the petitioner within the category of associations.

*Willis* v. *Commissioner*, 58 Fed. (2d) 121, affirming 22 B. T. A. 564.
Cf. *Russell Tyson et al., Trustees*, 25 B. T. A. 520.

We are of the opinion that petitioner was an association in 1925, 1926 and 1927 and taxable, therefore, as a corporation.

2. The authority for a deduction by a corporation for depletion in the case of oil and gas wells for the taxable years is contained in section 234(a)(8) of the Revenue Act of 1926, which reads as follows:

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*  \*

(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee;

\*  \*  \*  \*  \*  \*  \*

The above provision is mandatory in two respects; first, that there shall be allowed as a deduction a reasonable allowance for depletion, and, second, that such deduction shall, in the case of leases, be equitably apportioned between the lessor and the lessee.

The basis for determining depletion under the 1926 Act is prescribed in section 204(c), paragraph 2, which reads as follows:

SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—

\*  \*  \*  \*  \*  \*  \*

(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

The basis of a depletion allowance, computed without reference to the above paragraph, would be cost or March 1, 1913, value. Sec. 204(a) and (b).

Reading the two sections together, that is, the one authorizing a deduction for depletion and the other prescribing the basis, it is clear that the reasonable allowance for depletion in the case of oil and gas wells on leased property, which is to be equitably apportioned between the lessor and the lessee, is 27½ per cent of the gross income from the property during the taxable year. If the portion of such allowance which is equitably apportioned to the taxpayer (lessor or lessee) is more than 50 per cent of the net income

of such taxpayer, it is required to be reduced to an amount not in excess of 50 per cent of such net income, and if the amount apportioned to the taxpayer (the lessor or lessee) is less than it would be if computed without reference to paragraph 2, the allowance is to be based on the cost or the March 1, 1913, value.

The petitioner, as lessee, had a three-fourths interest in the oil produced from the wells, the other one-fourth interest being in Batson, the lessor, and Andrews, the original lessee. The depletion allowance with respect to the oil and gas wells is 27½ per cent of the gross income from the wells, equitably apportioned between petitioner, Batson, and Andrews.

The depletion allowance determined by the Commissioner is 27½ per cent of the petitioner's share of the gross income from the oil and gas wells, which amount is exactly the same as would have been determined if the Commissioner had taken 27½ per cent of the total gross income from the property and apportioned three-fourths of such amount to the petitioner. The amount determined by the Commissioner is not in excess of 50 per cent of the net income of the taxpayer and is not less than the deduction would be if computed without reference to the provision in section 204(c)(2). The determination of the Commissioner as to the amount of depletion allowable is therefore approved.

3. The third issue is whether the petitioner should be allowed to take deductions for depreciation upon the total cost of its wells, or whether the respondent is correct in determining that 60 per cent of the well costs should be charged to the capital account, returnable through allowances for depletion. The amount of additional deductions for depreciation to be allowed, if petitioner is correct, is stipulated. Section 234(a)(8), Revenue Act of 1926, already quoted, provides in the case of mines, oil and gas wells, for " a reasonable allowance for depletion and for depreciation of improvements."

Respondent relies on article 223 of Regulations 69, which provides that incidental expenses such as wages, fuel for engines, repairs, and hauling may be charged to capital account, returnable through depletion, while the expense of physical property (such as derricks, machines, etc.) may be subject to depreciation.

It is admitted that petitioner drilled its wells on what is known in the trade as a " turnkey contract," that is, for a lump sum payable to the contractor, and that the petitioner, therefore, had no interest or concern with the apportionment of the costs of drilling, simply charging the whole to the well cost account. The question is whether the total cost of the wells represents an investment in an improvement which is subject to depreciation.

Since the hearing in the instant case, the same question was presented and decided in *A. T. Jergins Trust*, 22 B. T. A. 551. The

same argument was there urged by the Commissioner, but we said, with respect to amounts expended for wages, fuel, repairs and hauling in connection with development and drilling, that " amounts expended in development and drilling operations convey to us the impression of expenditures for improvement of the property upon which the statute permits the taxpayer to deduct depreciation."

On this issue, therefore, we hold that the petitioner is entitled to the additional depreciation allowable for 1925, 1926 and 1927, in the sums stipulated.

*Judgment will be entered under Rule 50.*