## CROCKER ET AL., TRUSTEES, *v.* MALLEY, COLLECTOR OF INTERNAL REVENUE.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 649.  Argued March 6, 1919.—Decided March 17, 1919.

A law should not be construed to tax the same income twice, unless the intent to do so be clearly expressed.  P. 233.

The shareholders of a milling company, preliminary to winding it up, caused its active property to be conveyed and its other realty to be leased to a new corporation, the shares of which were left with persons who also were granted the fee of the leased property, upon a trust, designated by a name, in which the equitable interests were divided ratably among the original shareholders, and evidenced by separable and transferable certificates. The trustees were to hold the trust property upon trust to convert it into money and distribute the proceeds at a time left to their discretion, within 20 years after death of specified living persons, and in the meantime were to have the powers of an owner, distributing what they determined to be fairly distributable net income among the beneficiaries, and applying

funds to repairs or development of the property or the acquisition of new, pending conversion and distribution. Their compensation, beyond a stated percentage, was not to be increased, nor were vacancies to be filled or the trust terms modified, without the consent of a majority in interest of the beneficiaries acting separately, who, in other respects, had no control, and were declared to be "trust beneficiaries only, without partnership, associate or any other relation whatever *inter. sese.*" *Held,* that neither the trustees nor the beneficiaries, nor all together, could be regarded as a joint stock association, within the meaning of § II, G. (a), of the Income Tax Law of October 3, 1913; and that dividends upon the stock left with the trustees were not subject to the extra tax imposed by that section. P. 232.

*Semble,* that the purpose of the act in taxing corporations and joint stock companies, etc., upon dividends of corporations that themselves pay the tax, was to discourage concentration of corporate power through holding companies and share ownership. P. 234.

Where a tax is sustained by the Commissioner of Internal Revenue and its invalidity under the statute is not clear, there is probable cause for its exaction by the collector, and under Rev. Stats., § 989, in an action against him, recovery will be from the United States. P. 235.

Where a collector, with probable cause, collects an excessive tax, the amount due the United States should be deducted from the recovery, in an action against him, and such deduction will conclude the United States. *Id.*

250 Fed. Rep. 817, reversed.

THE case is stated in the opinion.

*Mr. Felix Rackemann,* with whom *Mr. Harrison M. Davis* was on the brief, for petitioners:

The act of Congress clearly recognizes the distinction between the fiduciary and the association or quasi-corporation; and from the language of sub-section G. (a), ("not including partnerships") it would even seem doubtful if Congress intended that any body should be excluded from this class except the ordinary commercial partnerships.

In Massachusetts there is no statute provision in respect

of any such association as the collector claims to exist in the case at bar, and the contention of the defendant must, therefore, rest either upon the quasi-partnership theory or some other entirely vague and general construction of the words "joint-stock company or association."

The beneficiaries have their common interests and perhaps equitable titles (or perhaps only rights to an account and share of proceeds realized by their trustee), but no immediate right or title to the property and no voice in its management or disposition, the entire legal title and authority being vested in the trustees.

Whether *cestui que trusts* are also partners does not depend—(*a*) upon the manner of the trust creation; (*b*) the pre-existing relations between the settler, or testator, or trust declarant, and the beneficiaries; (*c*) the number of beneficiaries; (*d*) the nature of the trust assets, or the use made of them; (*e*) the fact that the beneficial interests are evidenced by receipts, certificates, or so-called shares; (*f*) nor upon any transferability given, or attempted to be given, to such receipts or shares. *Mayo* v. *Moritz,* 151 Massachusetts, 481; *Williams* v. *Milton,* 215 Massachusetts, 1, 8. Some additional element is necessary, and this is provided when *cestui que trusts* are found with some control and authority, directly or indirectly, in the management, and with liability for debts. See *Meehan* v. *Valentine,* 145 U. S. 611; *Bartlett* v. *Slater,* 211 Massachusetts, 334. In each of the numerous Massachusetts cases, where partnerships or quasi-partnerships were found to exist, such control, in some form, existed. The distinction is clearly pointed out and definitely established in *Williams* v. *Milton, supra;* and *Foster* v. *Boston,* 215 Massachusetts, 31.

There are no facts whatever in the case at bar which bring it within the rules laid down in the Massachusetts partnership cases, referred to above. There is no associa-

tion in fact of any kind; there is no basis for the claim of such association. There are no shareholders' meetings; no beneficiary has any voice in the management, nor any control whatever over the trustees. There is no delegated authority or management on any theory of agency. There is no reserved power of control. We have simply a case in which certain shares of stock and certain real estate under lease are held by strict trustees under a written instrument. The beneficiaries have no relations whatever *inter sese;* they are in no sense partners nor "associates" for any purpose. Whatever might have been, the plaintiffs in fact simply held an invested property. They collected the dividends and the rentals and disbursed the whole net income.

If we turn to the English authorities we find only confirmation of the principles and distinctions hereinabove set forth. *Smith* v. *Anderson,* 50 L. J. Ch. 39; *Crowther* v. *Thorley,* 50 L. T. 43; *In re Siddall,* 54 L. J. Ch. 682; *In re Thomas, ex parte Poppleton,* 54 L. J. Q. B. 336. In this court the law is the same, and the case of *Taylor* v. *Davis,* 110 U. S. 330, is helpful, and perhaps conclusive. See also *In re Associated Trust,* 222 Fed. Rep. 1012; *Crocker* v. *Crocker,* U. S. Dist. Court, Massachusetts, May 23, 1914 (not reported).

It is, perhaps, significant that for two years the Treasury Department assessed taxes to the plaintiffs on the fiduciary theory here contended for. It is certainly very significant that the contention of the collector in the case at bar means double taxation.

The provision in the declaration of trust that the beneficiaries shall be trust beneficiaries only without partnership, associate or any other relation whatever *inter sese,* is important as bearing on the deciding element of intent. *Williams* v. *Milton, supra; Taylor* v. *Davis, supra; Ward* v. *Brigham,* 127 Massachusetts, 24, 27.

Neither the trustees, nor their *cestui que trusts,* nor

both, can be held to form an association, within the terms of the act, on any other theory than that of partnership. The words "joint stock" govern the word "association" just as much as the word "company," and the intent of sub-section G. (a) was to group only corporations and joint-stock companies similarly organized. The law knows the corporation, the partnership, the trust, and, more recently, the joint-stock company, which is a large partnership organized for profit with transferable shares and often some statute attributes. The law does not know any other classification.

Under the act, the association must be "organized." Cf. *Eliot* v. *Freeman,* 220 U. S. 186, 187. Where, in this case, shall we find any organization whatever, particularly in view of the agreement not to be associates of any kind?

It was certainly not intended to put fiduciaries in the same class with corporations, because, by section D, special provision is made for returns by all fiduciaries.

Counsel then criticised the theory of the court below, and contended for a strict construction. *Gould* v. *Gould,* 245 U. S. 151, 153.

*Mr. Assistant Attorney General Frierson* for respondent:

Counsel have argued that this trust is not a partnership. Thus far, there is no quarrel. The Government has taxed this income under a section of the act which excludes partnerships from its operation. But counsel have cited Massachusetts cases holding that similar trusts are not partnerships and urge them as authority for the contention that the trustees are mere fiduciaries. *Williams* v. *Milton,* 215 Massachusetts, 1, and other cases. An examination of these cases, however, will show that the court was only called on to determine whether a particular trust was a partnership or merely some form of trust not amounting to a partnership. If not a partnership, the question as to just what it was did not arise.

In *In re Associated Trust*, 222 Fed. Rep. 1012, the court, referring to the Massachusetts cases, held a trust very similar to this one not a partnership but an unincorporated company, which is only another name for an association, within the meaning of the Bankruptcy Act.

To be within the income-tax law an association is not required to be one organized under statutory authority. 36 Stat. 11, 112, c. 6, *Eliot* v. *Freeman*, 220 U. S. 179; 38 Stat. 166, c. 16; Bouvier's Law Dictionary, vol. 1, p. 269; 4 Cyc., p. 301; Words and Phrases, vol. 1, p. 584.

It will doubtless be conceded that any form of an unincorporated company is an association within the meaning of this act. Clearly, that is the very kind of organization which it was intended to tax, and probably no better description of an unincorporated company can be given than the one found in the case of *In re Associated Trust, supra*.

The court in that case found that the trust before it had the following features which were similar to those usually found in corporations, namely: (1) a capital contributed by the certificate holders; (2) future managers were to be chosen by the certificate holders; (3) the character, scope, and size of the enterprise might be changed or terminated by the certificate holders; (4) these rights were given to the certificate holders in the instrument by which the trust was constituted.

The present trust has all of these features, with one slight modification. The certificate holders may not, independently of the trustees, choose future managers or change the scope of the enterprise or terminate it. They are not, however, entirely divested of control in this respect. The trustees can do these things only with the written assent of a majority in interest of certificate holders. As in a corporation it is not essential that all stockholders shall have the same power of control, or even

that all shall have a voice in the management, so, in this organization, the original voting power was vested in the five stockholders who were named as trustees. The organization would not have been dissimilar to that of a corporation if this power had been unlimited. As to certain matters it was unlimited; but as to matters involving a change of the original scheme the certificate holders were given a right of veto.

Other points of similarity between this trust and a corporation are that both do business under a distinct name; that the managers of both are not personally liable for misconduct, errors, or omissions of their agents, if employed and retained with reasonable care, but only for the results of their own gross negligence or bad faith; and that, in those matters as to which the shareholders are empowered to act, the action of a majoirty, not in numbers but in interest, binds all. Each party in interest received a certificate showing what his interest was. The certificates were transferable. We have here a body of persons united without a charter, but upon methods and forms similar in many respects to incorporated bodies for the prosecution of a business enterprise. The organization is not bound by the acts of the individuals interested in it, but only by the trustees to whom the management is committed. Shares in it are transferable; it is not dissolved by the retirement, death, or bankruptcy of any of the individuals composing it, and these, it is respectfully submitted, include all the essentials of a business association within the meaning of the income tax law.

A person or corporation making the return required of a fiduciary reports income which has not accrued to it, but which has accrued to another who is liable for the tax. In the case of a mere trust, the rights of the beneficiary must be fixed so that he is entitled to the income collected and so that his right to it does does not depend upon the will of a corporation or other organization as to

whether it shall be distributed or shall be retained as the
property of the organization collecting it. In this case,
the declaration of trust does not require the distribution
of any particular part of the income. The trustees are
empowered to withhold all of the income and use it for
the development of the trust property itself. They have
the same power that a corporation has to determine
whether profits realized shall be distributed among stock-
holders or added to the surplus of the corporation. In
either case, no income accrues to the certificate holder
or stockholder until the organization having control of
the business determines whether there shall be a dis-
tribution. It follows, therefore, when the Wachusett
Trust collected income from the trust property, that in-
come accrued to the business organization operating
under that name and remained its income until it saw fit
to distribute it. While in its hands it was its income
and not income of the individual certificate holders.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action to recover taxes paid under protest
to the Collector of Internal Revenue by the petitioners,
the plaintiffs. The taxes were assessed to the plaintiffs
as a joint-stock association within the meaning of the
Income Tax Act of October 3, 1913, c. 16, Section II, G.
(a), 38 Stat. 114, 166, 172, and were levied in respect of
dividends received from a corporation that itself was
taxable upon its net income. The plaintiffs say that
they were not an association but simply trustees, and
subject only to the duties imposed upon fiduciaries by
Section II, D. The Circuit Court of Appeals decided
that the plaintiffs, together, it would seem, with those
for whose benefit they held the property, were an associa-
tion, and ordered judgment for the defendant, reversing
the judgment of the District Court. 250 Fed. Rep. 817.

The facts are these. A Maine paper manufacturing corporation with eight shareholders had its mills on the Nashua River in Massachusetts and owned outlying land to protect the river from pollution. In 1912 a corporation was formed in Massachusetts. The Maine corporation conveyed to it seven mills and let to it an eighth that was in process of construction, together with the outlying lands and tenements, on a long lease, receiving the stock of the Massachusetts corporation in return. The Maine corporation then transferred to the plaintiffs as trustees the fee of the property subject to lease, left the Massachusetts stock in their hands, and was dissolved. By the declaration of trust the plaintiffs declared that they held the real estate and all other property at any time received by them thereunder, subject to the provisions thereof, "for the benefit of the *cestui que trusts* (who shall be trust beneficiaries only, without partnership, associate or any other relation whatever *inter sese*)" upon trust to convert the same into money and distribute the net proceeds to the persons then holding the trustees' receipt certificates—the time of distribution being left to the discretion of the trustees, but not to be postponed beyond the end of twenty years after the death of specified persons then living. In the meantime the trustees were to have the powers of owners. They were to distribute what they determined to be fairly distributable net income according to the interests of the *cestui que trusts* but could apply any funds in their hands for the repair or development of the property held by them, or the acquisition of other property, pending conversion and distribution. The trust was explained to be because of the determination of the Maine corporation to dissolve without waiting for the final cash sale of its real estate and was declared to be for the benefit of the eight shareholders of the Maine Company who were to receive certificates subject to transfer and sub-

division. Then followed a more detailed statement of
the power of the trustees and provision for their com-
pensation, not exceeding one per cent. of the gross income
unless with the written consent of a majority in interest
of the *cestui que trusts*. A similar consent was required
for the filling of a vacancy among the trustees, and for a
modification of the terms of the trust. In no other matter
had the beneficiaries any control. The title of the trust
was fixed for convenience as The Wachusett Realty
Trust.

The declaration of trust on its face is an ordinary real
estate trust of the kind familiar in Massachusetts, unless
in the particular that the trustees' receipt provides that
the holder has no interest in any specific property and
that it purports only to declare the holder entitled to a
certain fraction of the net proceeds of the property when
converted into cash "and meantime to income." The
only property expressly mentioned is the real estate not
transferred to the Massachusetts corporation. Although
the trustees in fact have held the stock of that corpora-
tion and have collected dividends upon it, their doing
so is not contemplated in terms by the instrument. It does
not appear very clearly that the eight Maine shareholders
might not have demanded it had they been so minded.
The function of the trustees is not to manage the mills
but simply to collect the rents and income of such prop-
erty as may be in their hands, with a large discretion in
the application of it, but with a recognition that the
receipt holders are entitled to it subject to the exercise
of the powers confided to the trustees. In fact, the whole
income, less taxes and similar expenses, has been paid
over in due proportion to the holders of the receipts.

There can be little doubt that in Massachusetts this
arrangement would be held to create a trust and nothing
more. "The certificate holders . . . are in no way
associated together, nor is there any provision in the

[instrument] for any meeting to be held by them. The only act which (under the [declaration of] trust) they can do is to consent to an alteration . . . of the trust" and to the other matters that we have mentioned. They are confined to giving or withholding assent, and the giving or withholding it "is not to be had in a meeting, but is to be given by them individually." "The sole right of the *cestuis que trust* is to have the property administered in their interest by the trustees, who are the masters, to receive income while the trust lasts, and their share of the corpus when the trust comes to an end." *Williams* v. *Milton*, 215 Massachusetts, 1, 10, 11; *ibid.* 8. The question is whether a different view is required by the terms of the present act. As by D. above referred to trustees and associations acting in a fiduciary capacity have the exemption that individual stockholders have from taxation upon dividends of a corporation that itself pays an income tax, and as the plaintiffs undeniably are trustees, if they are to be subjected to a double liability the language of the statute must make the intention clear. *Gould* v. *Gould*, 245 U. S. 151, 153. *United States* v. *Isham*, 17 Wall. 496, 504.

The requirement of G. (a) is that the normal tax thereinbefore imposed upon individuals shall be paid upon the entire net income accruing from all sources during the preceding year "to every corporation, joint-stock company or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships." The trust that has been described would not fall under any familiar conception of a joint-stock association, whether formed under a statute or not. *Smith* v. *Anderson*, 15 Ch. Div. 247, 273, 274, 277, 282. *Eliot* v. *Freeman*, 220 U. S. 178, 186. If we assume that the words "no matter how created or organized" apply to "association" and not only to "insurance company," still it would be a wide departure

from normal usage to call the beneficiaries here a joint-stock association when they are admitted not to be partners in any sense, and when they have no joint action or interest and no control over the fund. On the other hand, the trustees by themselves cannot be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such, and the special provision for trustees in D. is to be made meaningless. We perceive no ground for grouping the two—beneficiaries and trustees—together, in order to turn them into an association, by uniting their contrasted functions and powers, although they are in no proper sense associated. It seems to be an unnatural perversion of a well-known institution of the law.

We do not see either that the result is affected by any technical analysis of the individual receipt holder's rights in the income received by the trustees. The description most in accord with what has been the practice would be that, as the receipts declare, the holders, until distribution of the capital, were entitled to the income of the fund subject to an unexercised power in the trustees in their reasonable discretion to divert it to the improvement of the capital. But even if it were said that the receipt holders were not entitled to the income as such until they got it, we do not discern how that would turn them into a joint-stock company. Moreover, the receipt holders did get it and the question is what portion it was the duty of the trustees to withhold.

We presume that the taxation of corporations and joint-stock companies upon dividends of corporations that themselves pay the income tax was for the purpose of discouraging combinations of the kind now in disfavor, by which a corporation holds controlling interests in other corporations which in their turn may control others, and so on, and in this way concentrates a power that is disapproved. There is nothing of that sort here. Upon the

whole case we are of opinion that the statute fails to show a clear intent to subject the dividends on the Massachu-setts corporation's stock to the extra tax imposed by G. (a).

Our view upon the main question opens a second one upon which the Circuit Court of Appeals did not have to pass. The District Court while it found for the plaintiffs, ruled that the defendant was entitled to retain out of the sum received by him the amount of the tax that they should have paid as trustees. To this the plaintiffs took a cross writ of error to the Circuit Court of Appeals. There can be no question that although the plaintiffs escape the larger liability, there was probable cause for the defendant's act. The Commissioner of Internal Revenue rejected the plaintiffs' claim, and the statute does not leave the matter clear. The recovery therefore will be from the United States. Rev. Stats., § 989. The plaintiffs, as they themselves alleged in their claim, were the persons taxed, whether they were called an association or trustees. They were taxed too much. If the United States retains from the amount received by it the amount that it should have received, it cannot recover that sum in a subsequent suit.

*Judgment of the Circuit Court of Appeals reversed.*
*Judgment of the District Court affirmed.*