## GARDINER et al. v. UNITED STATES.

### No. 2971.

District Court, D. Massachusetts.

Aug. 12, 1930.

Harris H. Gilman, of Boston, Mass., for petitioners.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass.

MORTON, District Judge.

This is an action to recover capital stock taxes assessed against the plaintiffs as trustees of the Samuel Hammond Real Estate Trust for the tax years ending June 30, 1921, to June 30, 1926, inclusive. They were assessed under the Revenue Act 1918, § 1000 (a) (1) (c) (40 Stat. 1126), Revenue Act 1921, § 1000 (a) (1) (b) (42 Stat. 294), and Revenue Act 1924, § 700 (a) (1) (b), 26 USCA § 223 note.

There is no controversy as to the facts. Samuel Hammond died testate leaving a substantial amount of business real estate. Under the provisions of his will it would eventually come to a number of devisees widely scattered in residence, the interest of some of them being as small as $^{15}/_{300}$. In order to facilitate the management of the real estate, the probate court made a decree, on the petition of parties interested, that the estate should be transferred to trustees who would issue transferable shares, i. e., that it should be turned over to a so-called Massachusetts trust. This was duly carried out, the declaration of trust being dated June 1, 1910. It was amended in 1919 and 1920 further restricting the powers of the shareholders. They have no power in the management of it, and they have never held any meeting. The trustees conferred as occasion required but they held no stated meetings, kept no record books, have no office as such and no officers, nor any seal. In other words they managed the property like testamentary trustees without any of the formalities associated with corporate organization.

The trustees took over a considerable amount of business real estate in Boston and have since managed it as above stated. They sold one parcel and bought another; but with this change the real estate is the same as that owned by the testator and originally transferred to the trustees. The trustees perform the usual duties incumbent on managers of business real estate, i. e.,

they arrange for tenants, make leases, collect rents, pay for repairs to some extent, pay the taxes and operating expenses, keep the property insured, etc. They have so arranged their leases for tenancies as not to undertake responsibility for the actual operating of the buildings, i. e., they do not run the heating plants, nor provide janitor and elevator service. On a change of tenants in one of the buildings in 1924 they made alterations adopting part of it for use as a restaurant. They took over as part of the trust some securities as well as this real estate; and they have from time to time made changes in these investments. The amount of the securities held is small compared to the real estate, and this part of the trust is regarded as relatively inconsequential. The trustees have always maintained that they were taxable as a trust, and not as an "association." They filed tax returns on the trust form during the years in question.

Obviously this trust is a strict trust, not a partnership, under the Massachusetts law. As was pointed out, however, in White v. Hornblower (C. C. A. 1st) 27 F.(2d) 777 August 27, 1928, this is not the test for present purposes, which is whether the trust is an association conducting business for profit or gain. I entertain no doubt that managing real estate of this character is engaging in business within the meaning of the statutes in question. It was explicitly so stated in Flint v. Stone Tracy Company, 220 U. S. 171, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. Such activities are widely different from merely holding a lease and distributing the rent (Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428) and from holding securities for the purpose of liquidation (White v. Hornblower (C. C. A.) 27 F.(2d) 777). The fact that the duration of this trust was limited by the instrument which created it is not of decisive significance. It was at one time not uncommon for corporate charters to have a time limitation.

The question whether this trust constitutes an "association" is less clear. The shareholders have, practically speaking, no voice or control in the management. What happened was that a group of unrelated and scattered persons, finding themselves interested as tenants in common, or in remainder, of certain business real estate, agreed with the approval of the probate court that it might be transferred to trustees who were to issue transferable shares representing ownership in the properties and were to manage the properties for the holders of the certificates without let or hindrance by them. The rights of certificate holders are defined in the trust agreement; it is a nexus by which all are bound, certificate holders and trustees alike. If the shareholders were empowered to elect or remove the trustees, nobody would doubt that the arrangement is an "association." It does not seem to me that the absence of this provision avoids that result. All parties to the trust are in effect bound into association by the trust agreement. This is, I believe, the principle on which Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, rests: "We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918; *this being true independently of the large measure of control exercised by the beneficiaries in the Hecht and Haymarket Cases*." Page 161 of 265 U. S., 44 S. Ct. 462, 468, 68 L. Ed. 949. (Italics mine.) Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, as explained in the Hecht Case supra, turned on the point that the Crocker trustees "were, in substance, merely holding property for the collection of the income and its distribution among the beneficiaries, and were not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business" (265 U. S. 160, 161, 44 S. Ct. 462, 468, 68 L. Ed. 949), rather than that the trust did not constitute an "association."

In matters of this sort the important thing is that the law shall be clear and definite, easy to be understood and applied by business men. Tests involving great subtlety and refinement of analysis are to be avoided if possible. In my opinion when parties associate themselves together under an agreement whereby transferable shares are issued to the beneficial owners, and the management of the property or enterprise is left with designated persons, an "association" within the meaning of these statutes has been formed. Whether its activities amount to carrying on business is a distinct question. I am aware of no decision by the U. S. Supreme Court inconsistent with these

views, and the Hecht Case shows a tendency toward them.

■ There is a further question whether the retroactive provisions of section 704 (a) of the Revenue Act of 1928 (26 USCA § 2704) applied to the taxes on capital stock here in question.

Under Hecht v. Malley, various trusts, which had been supposed both by their managers and by the Bureau to be taxable only as strict trusts and had been taxed on that basis, were exposed to taxation as corporations for past years as to which both the trusts and the Bureau understood that the tax liability had been fully settled. Cases are readily supposable in which this reversal of the Bureau's views might work great hardship and injustice. The Senate Report (No. 960, Calendar No. 987, 70th Congressional session, pp. 44 and 45) and the memorandum of the general counsel of the Treasury Department (No. 6417 C. B., 19 June, 1929, p. 152) show that this was fully recognized and that section 704a was intended as a measure of equitable relief. Mr. Smith makes an ingenious argument based on the statutory condition that relief shall be granted only when a return was filed by the trust; he says that, as no capital stock returns were filed by the plaintiffs, they did not meet this condition, and therefore cannot recover. The answer is, I think, that Congress plainly had nothing of the sort in mind. It meant to relieve an unjust situation as to certain taxpayers, arising out of the Hecht decision. It approaches absurdity to suppose that Congress intended this relief to apply only to one sort of the taxes involved. It meant that, if a trust filed such returns, as in the opinion of the Bureau and of its own managers were required by law from a strict trust, and was taxed as such, it should be entitled to relief.

Judgment accordingly for plaintiff.