## SLOAN et al. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6808.

Circuit Court of Appeals, Ninth Circuit.
Feb. 20, 1933.

Melvin D. Wilson, of Los Angeles, Cal., for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

SAWTELLE, Circuit Judge.

This petition for a review of a decision of the Board of Tax Appeals involves deficiencies in income taxes asserted against the petitioners as transferees and beneficiaries of the Dominguez Harbor Tract No. 2 for the years 1923, 1924, and 1925. There is no dispute as to the facts, and counsel in their respective briefs have adopted the findings of fact as made by the Board of Tax Appeals. These findings are as follows:

"The several petitioners are individuals residing in or near the city of Los Angeles, California.

"Prior to 1907, certain real estate operators had subdivided a parcel of land containing 108 acres situated between Long Beach and Wilmington, California, and known as the Dominguez Tract, and had sold a few lots. In the panic of 1907, the subdividers failed and the property reverted to the mortgage holders, the Henry Matson Estate. A representative of such estate later asked petitioner C. O. Middleton to take over the property for the purpose of liquidation.

"1912, Middleton made a nominal payment and in 1913, after inviting several others to join him in the matter, he took title to the property in the name of Charles O. Middleton and J. E. Adams as joint tenants and as trustees for all the parties interested in the acquisition and disposition thereof, and on September 1, 1913, Middleton and Adams executed the following declaration of trust:

" 'This indenture made this first day of September, A. D. 1913, Witnesseth: That Charles O. Middleton and J. E. Adams of Los Angeles, California, being designated the "trustees," have and hold the legal title in fee simple in joint tenancy with right of survivorship to the following described real estate situated in the county of Los Angeles, state of California, to wit: [describing the property]. Subject to an existing incumbrance in the amount of $139,345.00.

" 'That the said real estate is held by said trustees in trust for the beneficiaries hereinafter named, their lawful assigns and legal representatives according to their respective interests, for the following uses and purposes with the following powers in said trustees, to wit:

" 'To sell the whole or any part of said real estate and to that end to lay out and subdivide said lands or any part thereof; to pay commissions for the sale of said lands; to improve the same and to execute conveyances for said land or any part thereof; also to mortgage or lease said real estate or any part thereof; and to receive the rents and profits of said real estate and, as incidental to said powers, to prosecute and defend all actions at law or in equity relating to said property or any thereof; to collect moneys owing upon any sale or sales thereof and to satisfy judgments and claims relating thereto and to otherwise exercise full control and management of said property. When said property shall have been sold, to divide the proceeds of the sales thereof after deducting all necessary expenses, among the several beneficiaries or their lawful assigns or legal representatives according to their respective interests.

" 'The said beneficiaries and their assigns and legal representatives shall not have or hold any title to said land or any part thereof and shall not be authorized to maintain any suit for partition thereof or to annul or terminate this trust, except as herein provided.

" 'The beneficial interest in said property shall be divided into one thousand shares among the following named beneficiaries with the following number of respective shares to each:

P. H. O'Neil........................one hundred shares
J. E. Adams & J. H. Miller,
  joint tenants with right of
  survivorship ...................three hundred shares
J. A. Anderson.....................one hundred shares
Charles O. Middleton.......two hundred fifty shares
G. F. Sloan....................one hundred fifty shares
Alisal Ranch Company...........one hundred shares

" 'A separate certificate shall be issued to each beneficiary for his number of shares and upon surrender thereof, such certificate may be divided and separate certificates issued for such shares to those entitled thereto.

" 'In case of death, removal, or inability to act of either of said trustees, the survivor shall fill such vacancy by proper conveyance.

" 'Certificates of trust issued under this instrument may be transferred by assignment and delivery.

" 'Three fourths of the beneficiaries in interest may by an instrument in writing, remove any trustee under this instrument and appoint another in his stead and may require such trust property to be conveyed to such surviving trustee and new trustee in joint tenancy by proper conveyance and in case of the death or inability of both said trustees, may fill such vacancies. Three fourths in interest of said beneficiaries may likewise terminate this trust at any time and partition said property by their own act or by judicial proceedings for partition, but in any event this trust shall cease and determine upon the decease of all the natural persons in being named in this instrument.

" 'The trustees shall be empowered at any time prior to the determination of this trust whenever in their judgment it may be expedient and proper, to declare dividends of money among the respective beneficiaries, derived from sales of real estate.'

"Certificates of beneficial interest were is-

sued in conformity with the trust instrument. Two of such certificates were assigned to other parties and such assignments were recognized by the trustees.

"On November 25, 1914, Middleton resigned as trustee and Adams appointed P. H. O'Neil as his successor. On February 15, 1915, O'Neil resigned and Adams appointed G. F. Sloan as his successor.

"On February 29, 1924, March 9, 1925, and March 15, 1926, respectively, the trustees filed fiduciary returns for the years 1923, 1924 and 1925. On March 15, 1929, the trustees executed and caused to be filed with the Collector of Internal Revenue at Los Angeles and with the revenue agent in charge at the same city, an election to be taxed for the years 1923, 1924 and 1925 as a trust under the provisions of section 704 (b) of the Revenue Act of 1928, 26 USCA § 2704 (b).

"The trustees never acquired any land in addition to the lots taken over in 1913 and through agents sold all such lots prior to 1923. Throughout the taxable years they sold no lots and their activities were limited to collecting installment payments on sales contracts previously made, paying expenses, executing deeds for lots covered by paid-up contracts, and distributing proceeds of collections to the beneficiaries. None of the receipts from sales was reinvested or retained as working capital.

"The beneficiaries never held a meeting, removed or appointed a trustee, terminated the trust or partitioned the land."

The question presented is whether the so-called Dominguez tract was an association, taxable as a corporation for the taxable years in question, as determined by the respondent, and as found by the Board, or a strict trust, as contended by the beneficiaries.

Respondent concedes error with respect to the taxable year 1923. The reasons for this concession on the part of respondent are stated in the brief as follows:

"It will be necessary to treat the taxable year 1923 separately.

"The term 'corporation' is defined by section 2 of the Revenue Acts of 1921, (42 Stat. 227) 1924 and 1926 (26 USCA § 1262) to include associations. The term 'association' is not defined in any of the revenue laws. It has been defined in the regulations promulgated by the Commissioner from time to time, pursuant to statutory authority. Article 1502 of Treasury Regulations 62, promulgated under the Revenue Act of 1921, defines 'association' to include 'common law trusts

* * * which act or do business in an organized capacity.' Article 1502 of the cited regulation distinguishes 'association' from 'trust.' While it is not as clearly drawn as might be desired, it purports to make the presence or absence of control by the beneficiaries the standard for determining whether an organization is a trust or an association within the meaning of the statute.

"The entire administrative viewpoint was changed by the decision of the Supreme Court in Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949. Theretofore the Treasury Department, in reliance upon the earlier decision in Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, had ruled that control by the beneficiaries was essential in order that a trust should be classified as an association. In Hecht v. Malley, supra, the Supreme Court departed from the earlier criterion of beneficiary control, holding that a trust is to be treated as an association irrespective of such control where organized in corporate form for the conduct of a business enterprise. The decision in Hecht v. Malley was adopted and published as T. D. 3595, III-1 C. B. 489, on August 11, 1924, and the Treasury Department has adopted that date as marking the change from the prior practice based upon the existence of beneficiary control to the new rule made necessary by the more recent decision of the Supreme Court.

"Section 704 (a) of the Revenue Act of 1928 [26 USCA § 2704 (a)] was designed to afford retroactive relief to taxpayers from the consequences of a retrospective application of the principles of Hecht v. Malley, supra, which would have subjected them to tax as associations, although they would have been taxable as trusts under the administrative rulings in effect at the time the return was filed or the trust was dissolved. This clearly appears by reference to the legislative history of the statute. The language of the act is broad and relief is extended in respect of any taxpayer who filed a return as a trust for a taxable year prior to 1925 who would have been considered (by the Treasury Department) taxable as a trust under regulations in force or under any applicable ruling of the Bureau effective when the return was filed.

"The return for 1923 was filed on February 29, 1924. Whatever question may exist as to the proper interpretation of article 1504 of Treasury Regulations 62, we concede that under applicable Treasury rulings in effect when the return was filed the petitioners

were taxable as a trust and not as an association. On behalf of the respondent error is therefore confessed in so far as the Board of Tax Appeals held the petitioners taxable as an association for the year 1923."

Respondent further states:

"A very different situation is presented with respect to the taxable years 1924 and 1925. The return for the year 1924 was filed on March 9, 1925. By that time the views of the Treasury Department had crystallized along the line of the principles announced in Hecht v. Malley, supra, Article 1504 of Treasury Regulations 65, promulgated under the Revenue Act of 1924, provided that—

"Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations within the meaning of the act, regardless of the control exercised by the beneficiaries.

"On August 31, 1925, the article above quoted was amended and amplified by T. D. 3748, providing—

"Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute.

"The matter above quoted was incorporated as a part of Article 1504, Treasury Regulations 69, under the Revenue Act of 1926.

"The Treasury regulations have been carried over in substantially unchanged form since 1924. During this period the Congress has thrice reenacted without change the provisions of the revenue act upon which the Treasury regulations were based. The regulations are therefore to be accorded the force and effect of law. [Cases cited.]"

As stated by Judge Neterer, speaking for this court in the case of Commissioner of Internal Revenue v. Atherton, 50 F.(2d) 740, 742: "The controlling feature of a trust is an association of individuals for administration of an estate for liquidation and equitable distribution, and the controlling distinction of an association is an association of individuals for administration of an estate for convenience and profit."

In the case of Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516, 37 S. Ct. 201, 204, 61 L. Ed. 460, the Supreme Court said: "It is evident, from what this court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain, and such activities as are essential to those purposes."

We think that petitioners were an association within the meaning of the law and regulations of the Treasury Department, and that they were engaged in business for profit during the taxable years in question. Petitioners contend, however, that "whatever may have been done in the preceding years, the activities of the trust were certainly limited to the liquidation of contracts in the taxable years involved." We do not think that this necessarily follows. We think that the activities during the taxable years were necessary to enable the association to realize the profits for which it was organized. As said by the Supreme Court in the case of Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312: " 'Business' is a very comprehensive term and embraces everything about which a person can be employed. Black's Law Dict., 158, citing People v. Commissioners of Taxes, 23 N. Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' Bouvier's Law Dict. [vol. 1] p. 273."

The activities of the association during the taxable years in question, as shown by the facts found, was as essential to enable it to reap the profit contemplated at the time of organization as was its activities in previous years. The business was continued by the association for the purpose of increasing the income and profit of the beneficiaries.

The association having been organized for the purpose of realizing income and profit, it cannot be that merely because all of the lots of the association had been sold, although the purchase price thereof had not been paid, its activities ceased upon the sale of the lots, and that during the taxable years in question the association ceased its activities and be-

came a strict trust within the meaning of the law.

The instant case was cited with approval by this court in the case of trust No. 5833, Security-First Nat. Bank v. Welch (Dec. 7, 1931) 54 F.(2d) 323, certiorari denied 286 U. S. 544, 52 S. Ct. 496, 76 L. Ed. 1281. Now that the case is before us and we have had occasion to examine the record therein, together with the applicable statutes and decisions, we are in entire accord with the decision of the Board of Tax Appeals. To be sure, the facts in the instant case and those in the case of trust No. 5833 are not identical; but that is not to be expected. The same general principle controls. See, also, Merchants' Trust Co. v. Welch (C. C. A. June 13, 1932) 59 F.(2d) 630.

Reversed as to the year 1923; affirmed as to the years 1924 and 1925.