## DUNBAR et al. v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### Nos. 2770–2772.

Circuit Court of Appeals, First Circuit.
May 23, 1933.

Allison L. Newton, of Boston, Mass. (Nutter, McClennen & Fish, of Boston, Mass., on the brief), for petitioners for review.

J. P. Jackson, Sewall Key, and Francis H. Horan, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

BINGHAM, Circuit Judge.

These are petitions to review decisions of the Board of Tax Appeals determining deficiencies in income taxes against the petitioners in the sum of $3,854.80 for the calendar year 1924, $784.91 for the calendar year 1925, and $769.30 for the calendar year 1926.

The basis of the determination by the Board was its ruling that the petitioners were an association taxable as a corporation and not as a trust. The question is whether the Fiske and Hammond trust, so called, was an association under section 2 (a) (2) of chapter 237 of the Revenue Act of 1924 (43 Stat. 253) and of section 2 (a) (2) of chapter

27 of the Revenue Act of 1926 (44 Stat. 9, 26 USCA § 1262 (a) (2).

Section 2 (a) (2) of the Revenue Act of 1924 is the same as the corresponding section of the Revenue Act of 1926, and reads as follows:

Sec. 2. (a) "When used in this title—
* * *

"(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies."

May 12, 1924, Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, was decided. In that case the Supreme Court had under consideration section 1 of the Revenue Act of 1918 (40 Stat. 1057) which reads the same as section 2 (a) (2) of the Revenue Acts of 1924 and 1926. Section 1000 (a) of the Act of 1918 provided that:

"Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business," etc. And section 700 of the Revenue Act of 1924 (26 USCA § 223 note) imposed a like tax on every domestic corporation "with respect to carrying on or doing business."

In Hecht v. Malley it was pointed out (265 U. S. 154, bottom, 44 S. Ct. 462, 466, 68 L. Ed. 949) that section 1 and section 1000 (a) of the Act of 1918, when read together, provided in terms that "every corporation, association, joint-stock company and insurance company, 'created or organized in the United States,' shall pay a special excise tax, as prescribed, with respect to the carrying on or doing business." And it was held (1) that the provisions of the Act of 1918 plainly showed the intention of Congress "to extend the tax from one imposed solely upon organizations exercising statutory privileges, as theretofore, to include also organizations exercising the privilege of doing business as associations at the common law"; (2) that the Hecht trust, the Haymarket trust, and the Crocker and Burbank trust (the organizations there involved), each of which were engaged in carrying on business, were " 'associations' created or organized in the United States and engaged in business, within the meaning of the Act"; that "the word 'association' as used in the Act clearly includes 'Massachusetts Trusts' such as those herein involved, having quasi-corporate organizations under which they are engaged in carrying on business enterprises" (265 U. S. page 157, bottom, 44 S. Ct. 462, 467, 68 L. Ed. 949); that these trusts differ from the Wachusetts trust, under consideration in Crocker v. Malley, 249 U. S. 223, 39 S. Ct.

270, 63 L. Ed. 573, 2 A. L. R. 1601, for there "the trustees were, in substance, merely holding property for the collection of the income and its distribution among the beneficiaries, and were not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business" (pages 160, 161 of 265 U. S., 44 S. Ct. 462, 468); and "that Crocker v. Malley is not an authority for the broad proposition that under an Act imposing an excise tax upon the privilege of carrying on a business, a Massachusetts Trust engaged in the carrying on of business in a quasi-corporate form, in which the trustees have similar or greater powers than the directors in a corporation, is not an 'association' within the meaning of its provisions." In other words it held that the so-called trusts were associations because, through their trustees, they were engaged in carrying on a business after the manner and form of a corporation, the trustees having similar or greater powers than the directors in a corporation, and, such being the case, they were to be deemed associations within the meaning of the Act of 1918; and that that was so "independently of the large measure of control exercised by the beneficiaries" in the Hecht and Haymarket Cases. That is, even if the control of the certificate holders had been little or nothing, nevertheless, as the trusts were engaged, through the trustees, in carrying on business after the manner and form of a corporation, they were associations within the meaning of the act; that a slight measure of control on the part of the beneficiaries, under such circumstances, would not relieve them from being associations.

June 7, 1924, following the decision in Hecht v. Malley, supra, the Secretary of the Treasury approved and promulgated the following Treasury Decision (No. 3598), published June 16, 1924:

"To Collectors of internal revenue and others concerned:

"In order to give effect to the decision of May 12, 1924, by the United States Supreme Court in the case of Hecht v. Malley and in the other cases named therein (Nos. 99, 100, 101, and 119—October Term, 1923) article 7 of Regulations 50 (revised edition, approved June 21, 1920) and article 8 of Regulations 64 are amended so as to read as follows:

"Trusts. Two distinct classes of trusts are recognized by the Department, namely, holding trusts and operating trusts.

"Holding trusts are those in which the trustees are merely holding property for the

collection of the income and distributing it among the beneficiaries and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business. Such trusts are not associations within the meaning of the law and are not subject to the tax.

"Operating trusts are those in which the trustees are not restricted to the mere collection of funds and paying them over to the beneficiaries but are associated together in much the same manner as directors in a corporation for the purpose of, and are actually engaged in, carrying on some business enterprise. These trusts, whether of the Massachusetts type or otherwise, are to be deemed associations within the meaning of the Act, independently of any control exercised by the beneficiaries, and subject to the tax.

"D. H. Blair,
"Commissioner of Internal Revenue.
"Approved June 7, 1924,
"A. W. Mellon,
"Secretary of the Treasury."

On August 11, 1924, the Commissioner promulgated Income Tax Ruling No. 2061, as follows:

"The general rule in regard to holding trusts and operating trusts which is announced in the decision of the Supreme Court of the United States in the case of Hecht v. Malley and in Treasury Decision 3598 * * * is applicable under all titles of the Revenue Acts of 1918 and 1920."

This was afterwards made to cover the years 1921 and 1924. Memorandum 2291 of Solicitor of Internal Revenue (July 9, 1924), published August 18, 1924.

On October 6, 1924, Treasury Regulations 65 were promulgated, articles 1502 and 1504 of which read as follows:

"Art. 1502. Association. Associations and Joint-stock companies include associations, common-law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders on the basis of the capital stock which each holds, or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. * * *

"Art. 1504. Association distinguished from trust.

"Holding trusts, in which the trustees are merely holding property for the collection of the income and its distribution among the beneficiaries, and are not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, are not associations within the meaning of the law. The trust and the beneficiaries thereof will be subject to tax as provided in articles 341–347. Operating trusts, whether or not of the Massachusetts type, in which the trustees are not restricted to the mere collection of funds and their payments to the beneficiaries, but are associated together in much the same manner as directors in a corporation for the purpose of carrying on some business enterprise, are to be deemed associations within the meaning of the Act, regardless of the control exercised by the beneficiaries."

In Treasury Regulations 69, article 1502 is identical with the same numbered article in Regulations 65, but article 1504 was made to read as follows:

"Art. 1504. Association distinguished from trust.

"Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341–347. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute."

The Commissioner in his contention that the Fiske and Hammond trust is an association relies largely upon the last clause of article 1504 as promulgated under the Acts of 1924 and 1926, respectively. The only material difference in the language of these clauses for those years is that in article 1504 for the year 1924, the clause begins with the

450

words "Operating trusts, whether or not of the Massachusetts type," while in the same article for 1926 these words do not appear in the clause. The phrase "Regardless of the control exercised by the beneficiaries" contained in the last clause of the article for 1924 does not differ in meaning from the phrase "Even in the absence of any control by the beneficiaries" contained in the clause of the article for 1926. In fact the two phrases in article 1504 for the two years, though worded somewhat differently, mean the same. Nor does the last clause of article 1504, when read in connection with the first clause of that article for the two years, differ from the last clause of the Treasury Decision promulgated June 7, 1924, and published June 16, 1924, "in order [as it says] to give effect to the decision of May 12, 1924, by the United States Supreme Court in the case of Hecht v. Malley," although from the last clause of article 1504 there is omitted after the words "for the purpose of" and before the words "carrying on some business enterprise" the words "and are actually engaged in." Why these words were omitted from this clause of article 1504 in 1924 and 1926 we are not informed. If it was not thereby intended to change the meaning of the clause in either case, it is unimportant. If with a contrary intention, then it is plain that neither clause complies with the holding of the Supreme Court in Hecht v. Malley or accords with the last clause of Treasury Decision promulgated June 7, 1924, which, according to its own language, was adopted "in order to give effect to the decision of May 12, 1924, of the United States Supreme Court in the case of Hecht v. Malley." It is probable that it is the omission from article 1504 of the words "and are actually engaged in" which has given rise to the contention of the commissioner that the Fiske and Hammond trust is an association. His contention is, in substance, that the Fiske and Hammond trust is an association within the meaning of the act because its trustees, by the terms of the trust, are given wide powers in the way of carrying on business; and that it is an association although the trustees do not exercise those powers by actually engaging in business. He states that a test based on the trustees actually engaging in business is difficult to apply and, therefore, should not be considered as an element in determining whether the organization is a trust or an association.

The Fiske and Hammond trust was a family affair. Prior to its creation Esther Fiske Hammond owned a parcel of land with a building at 9 Harrison avenue in Boston;

and she and her brother, George S. Fiske, and certain trustees for his benefit owned in common three parcels of land and buildings thereon in Boston. One was the Fiske building at 89 State street; one the Fiske building annex at 99 State street; and the other was a building at 41–45 Essex street and 1–3 Harrison avenue. At the time of the creation of the trust all of the property was under lease for about eight years and seven months, the periods ending in 1928. Under the terms of these leases the lessees were to make repairs and furnish their own heat and janitor service.

At the time of the creation of the trust, the Fiske building and annex were in the hands of a real estate firm under instructions to sell the property as soon as possible, and within about twenty days after the deed was given to the trustees the Fiske building and annex were sold through the real estate firm. Part of the purchase price was paid in cash, the balance being secured by a mortgage. The cash was distributed immediately to the shareholders, as were the later payments of the principal and interest, the final payment on the mortgage being November 4, 1924.

During 1924, the first year in question, the only duties performed by the trustees were the collection of the balance of the mortgage debt and distributing it to the shareholders, and the collection of the rentals under the leases of the two unsold properties, the payment of taxes and insurance on these properties and the distribution of the net receipts to the beneficiaries.

The trust, according to its terms, was to continue during certain lives and twenty years thereafter, unless sooner terminated by the trustees in their discretion. The trustees were given broad powers. They included, among other things, power to lease the properties in whole or in part from time to time; to sell or exchange the same, as they saw fit; to buy other property, real or personal; to borrow money to improve the properties or to purchase other property; to make dividends from the income and principal; and generally to manage the estate. The trust deed expressly named the person who was to fill the first vacancy in the office of trustee. The surviving trustees were authorized to fill any succeeding vacancy, having first obtained the written individual assents of a majority of the shareholders. These were in substance the powers of the trustees.

The shareholders had no control over the trustees in the management of the trust; they could not amend the trust or remove a trus-

tee. And, in case of a vacancy in the office of trustee, a majority of the shareholders, acting separately and not in meeting, only had a negative upon the power of the trustees to fill such vacancy.

It is evident that the trustees of the Fiske and Hammond trust, during the periods in question, were not actually engaged in carrying on a business and were not an association within the meaning of Hecht v. Malley, the Treasury Decision of June 7, 1924, or within the last clause of article 1504, unless that article, in the particular in question, was incomplete and failed to comply with the decision of the Supreme Court in Hecht v. Malley and the Treasury Decision of June 7, 1924. The words "and are actually engaged in" were regarded by this court as constituting a part of article 1504 in White v. Hornblower, 27 F.(2d) 777, at page 778.

The question, therefore, reduces itself to this: Was the Fiske and Hammond trust, because of the broad powers vested in the trustees by the declaration of trust, an association within the meaning of section 2 (a) (2), even though they did not exercise those powers by engaging in business?

In White v. Hornblower, 27 F.(2d) 777, 778, this court said: "The measure of control over the trust vested in the beneficiaries does not seem to be the determining factor, but rather whether the trustees are conducting a business for profit or gain." And as in that case the trust was created to hold certain securities and ultimately liquidate the same and the trustees were not carrying on a business enterprise, it was held that they were not taxable as an association.

In Lansdowne Realty Trust v. Commissioner, 50 F.(2d) 56, 58, this court stated: "We are also of the opinion that the trust was not an association and taxable as a corporation on the ground that it was doing business as such. It is true that the trustees had powers of a broad character, but they did not exercise them and were not carrying on business after the form and manner of a corporation. When the trustees received the property, it had all been leased for a term of five years from March 1, 1920. During this period of five years the trustees were not called upon to seek tenants or to do anything with reference to the property of any consequence except to collect the rents and turn them over to the beneficiaries. By the terms of the lease the lessees were to keep the premises in repair, pay the insurance, and be responsible for all damages connected with the building. It is perfectly apparent that they were not doing business in any sense, during the years 1923 and 1924, and we are of the opinion that, during the years 1925 and 1926, they were not conducting business after the mode and manner of a corporation, but were doing nothing more than trustees ordinarily would be called upon to perform in the management of trust property."

In Gardiner v. United States (C. C. A.) 49 F.(2d) 992, 996, the precise question whether in a case where the trustees under the declaration of trust were given broad powers in the way of engaging in business but did not exercise them and engage in business, and where the shareholders had no control over the trustees, the organization was an association or not, was presented. The case was twice argued and this court, on rehearing, held "that the crucial test must be found in what the trustees actually do, not in the mere existence of long unused broad powers," and reversed our prior decisions and the judgment below, where it had been held that the organization was an association and taxable as such. See, also, Fisk v. United States (D. C.) 60 F.(2d) 665, 667, where, on a like state of facts, Judge Brewster said: "It is now pretty well settled that the test is not what powers or authority reside in the trustees or the shareholders, but, as stated by Judge Anderson in Gardiner v. United States (C. C. A.) 49 F.(2d) 992 at page 996, 'the crucial test must be found in what the trustees actually do, not in the mere existence of long unused broad powers.'"

In each case:

The decision of the Board of Tax Appeals is vacated and the case is remanded to that Board for further proceedings not inconsistent with this opinion.

MORTON, Circuit Judge (concurring).

When persons associate themselves together under an agreement whereby transferable shares are issued to the beneficial owners, and the management of the property or enterprise is left to trustees whose powers are defined in the instrument establishing the trust, it seems to me that an "association" within the meaning of the tax statutes has been formed. The commercial management of property, whether real or personal, for income or profit, seems to me engaging in business. These views were, however, on the most careful consideration, disapproved by this court in Gardiner v. United States, 49 F.(2d) 992, which covers the present case. For this reason I concur in the result.