INDUSTRIAL LOAN SOCIETY, INC., (MD.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 9247, 16534. Promulgated March 27, 1950.

*Archie M. Dawson, Esq.*, and *Paul Smith, Esq.*, for the petitioner. *Francis X. Gallagher, Esq.*, for the respondent.

490

OPINION.

Opper, *Judge*: Petitioner's application for section 722 relief seems to us to require disallowance for two reasons, or perhaps two aspects of the same one. The essence of both is that the prior corporate owner of the business which petitioner acquired, and the activity of which it seeks to use as the measure of its reconstructed base period earnings, is and always has been under complete common ownership and control with petitioner.

Although petitioner itself was not in business for more than the last six months of the base period, respondent has not computed its tax liability with regard only to the actual figures of that limited experience. It is stipulated that he has employed the provisions of section 713 (d) (2), which amount to an application of an invested capital theory on a species of annualized basis; and of section 713 (f), which is the so-called "growth formula." While these adjustments are expressly authorized by the statute and are clearly applicable by their terms to petitioner's situation, it insists that their inadequacy permits it to resort to the more flexible provisions of section 722.

There can be no question that petitioner, its transferor, and their common parent are separate juristic persons, and for tax purposes would ordinarily be treated as such. See *National Carbide Corporation* v. *Commissioner*, 336 U. S. 422. But we are here asked to apply a section of the law which speaks essentially in terms of what is "fair

and just."[1] In a suit for refund of taxes, equitable principles may require unitary treatment of a trust and its beneficiary—ordinarily at least as separate as a corporation and its wholly owned subsidiary.[2] *Stone* v. *White*, 301 U. S. 532, 537.

The terms of section 722, which also makes provision for the recovery of taxes already paid, show that it was no more intended to be a vehicle of inequity than the action for money had and received involved in the *Stone* case. We can not assume that the doctrine of corporate individuality should result in making it one. See *United States Paper Exports Association* v. *Bowers* (C. C. A., 2d Cir.), 80 Fed. (2d) 82; *Crocker* v. *Malley*, 249 U. S. 223. "* * * the fact that the petitioners and their beneficiary must be regarded as distinct legal entities for purposes of the assessment and collection of taxes does not deprive the court of its equity powers or alter the equitable principles which govern the type of action which petitioners have chosen for the assertion of their claim." *Stone* v. *White, supra.*

In that case "The question for decision * * * [was] whether the petitioners, testamentary trustees, who have paid a tax on the income of the trust estate, which should have been paid by the beneficiary, are entitled to recover the tax, although the government's claim against the beneficiary has been barred by the statute of limitations." The Court concluded that: "Equitable conceptions of justice compel the conclusion that the retention of the tax money would not result in any unjust enrichment of the government. All agree that a tax on the income should be paid, and that if the trustees are permitted to recover no one will pay it. It is in the public interest that no one should be permitted to avoid his just share of the tax burden except by positive command of law, which is lacking here."

---

[1] SEC. 722. [I. R. C.] GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

(a) GENERAL RULE.—In any case in which the taxpayer establishes that the tax computed under this subchapter (without the benefit of this section) results in an excessive and discriminatory tax and establishes what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon comparison of normal earnings and earnings during an excess profits tax period, the tax shall be determined by using such constructive average base period net income in lieu of the average base period net income otherwise determined under this subchapter. * * *

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

* * * * * *

(4) the taxpayer, either during or immediately prior to the base period, commenced business or changed the character of the business and the average base period net income does not reflect the normal operation for the entire base period of the business. If the business of the taxpayer did not reach, by the end of the base period, the earning level which it would have reached if the taxpayer had commenced business or made the change in the character of the business two years before it did so, it shall be deemed to have commenced the business or made the change at such earlier time. * * *

[2] Cf. secs. 161, 162, I. R. C., with sec. 45, I. R. C.

We do not suggest that this is an equitable proceeding or that there has been conferred upon the Tax Court by section 722 any equitable jurisdiction. But in the light of considerations analogous to those appealing to equity and the good conscience of the chancellor, we are required here to apply a statute using the words "fair and just," and dealing with the concept of an "inadequate standard of normal earnings," where the test of adequacy or inadequacy must be employed in determining whether the tax would otherwise "be excessive and discriminatory." When petitioner seeks to use for its constructive average base period income under section 722 the same experience which its corporate brother has already used up under section 713, its attempt to obtain the duplicate benefits for its parent does not seem to us distinguishable from the conduct which *Stone* v. *White* forbids.

The second ground for disallowing the claim has to do with legislative intent as evidenced by the statutory design and the interplay of related sections such as those in Supplement A. The latter provisions are admittedly inapplicable. Otherwise, resort to section 722 would have been unnecessary, and probably unavailable. See *George J. Meyer Malt & Grain Corporation*, 11 T. C. 383. But it seems evident that the relief Supplement A furnishes to certain related or successor businesses if they qualify under its terms is identical with what is being proposed here, namely, to employ the base period experience of a predecessor. See *A. C. Burton & Co.*, 14 T. C. 290. The purpose to limit these benefits so as to avoid duplications seems equally clear. See, e. g., section 742. While the actual experience of a predecessor might in ordinary circumstances be adequate evidence upon which to base a finding of a taxpayer's constructive base period net income, the situation is otherwise here, in view of the relationship between petitioner and the owner of the business during the base period and the undoubted duplication which would otherwise result. It is hard to believe that in the more flexible provisions of section 722 (e) (2), addressed as it is moreover to attempts at redressing inequitably harsh results,[3] there should have been incorporated a purpose contrary to that of the other comparable sections.

---

[3] "3. GENERAL RELIEF PROVISIONS

"Section 213 of the bill amends the relief provisions of existing law, section 722, broadening its application to cases which do not fall within the specific provisions of existing law, thereby removing certain inequities and alleviating hardships for which relief cannot be obtained at the present time.

"NEED FOR THE LEGISLATION

"The need for this legislation was recognized when the excess-profits tax was enacted in 1940, and in the excess-profits-tax amendments of 1941, as pointed out in the committee reports on those acts. (H. Rept. No. 146, S. Rept. No. 75, on H. R. 3531, 77th Cong., 1st sess.)

"It was there stated that equitable considerations demand that every reasonable precaution should be taken to prevent unfair application of the excess-profits tax in abnormal cases; * * * Such experience demonstrates that abnormal and unusual cases arise, diverse in character and unforeseeable, for which special legislation is necessary if the purpose of the law is to be carried out." (Ways and Means Committee Report, No. 2333, 77th Cong., 2d sess., p. 21.)

We are not now confronted with a case where the corporate affiliate has refrained from availing itself of its portion of the net income credit based upon the same earnings or where it offers to relinquish it. Cf. Excess Profits Tax Council Ruling, E. P. C. 20, 1947–2 C. B. 135. Still less do we have a case where the petitioner represents a wholly separate interest and has had no benefit from such a credit. We are not required to pass upon such situations, and express no opinion as to their proper disposition.

It may even be that had petitioner attempted to prove otherwise what a new business of the same kind and in the same locality would have earned during the "pushback" period, such evidence would have raised a different question. But all that the present record shows is the actual earnings of the related predecessor. We are unable to find that such figures, based as they are upon the necessary duplication of excess profits credits, could possibly represent a "fair and just amount," constituting also the simultaneous constructive base period income of this petitioner.

Petitioner, having contested the deficiencies and claimed the overpayment only by resort to section 722 relief,

*Decision will be entered for the respondent.*

Reviewed by the Special Division.

––––––

Disney, *J.*, dissenting: Because section 722 (a) requires the applicant for relief to reconstruct average base period net income in a "fair and just amount," the majority deny petitioner relief for the reason that it measured such amount by the experience of its coaffiliate from which it purchased its business during the base period, and because the coaffiliate had been allowed excess profits tax credit based upon such experience. The majority view is that such experience was improperly "used" by petitioner, having already once been used, and that the petitioner obtains for its parent "duplicate" benefits. I can not agree that petitioner "used" such experience a second time. It merely pointed to it as a good example of a comparative, as it could have pointed to any other similar corporation, under a well established technique of proving a base period norm of earnings by comparison with those of a comparative business. The majority seems to consider petitioner as claiming, as a matter of right, the use of the experience of its coaffiliate, but since the petitioner is not, and does not claim to be, an "acquiring corporation" under Supplement A, section 740, it is clear that the coaffiliate is cited only as a comparative.

Moreover, under sections 141 and 730 of the Internal Revenue Code, a consolidated excess profits credit is provided in case of consolidation of return by corporations like petitioner, its coaffiliate from whom it purchased, and the common parent corporation. No such consolidated return having been filed in this matter, petitioner must for purpose

of such credit be regarded as a separate juristic entity. Though paying lip service to that principle, the majority, in my view, violate its essentials and in effect compel the petitioner to be treated as if on a consolidated return basis. The petitioner, filing separate return and having none of the benefits of consolidated basis, and having a right to point to its coaffiliate, as a comparative, in my view is not duplicating the benefits of the coaffiliate, and I find nothing "fair and just" in denying relief. I therefore dissent.